UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKELL FUSON,

        Petitioner,

                                 Case No. 15-cv-10089

v.

                                 HON. TERRENCE G. BERG

DUNCAN MACLAREN,            HON. ELIZABETH A. STAFFORD

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL _IN FORMA_ PAUPERIS**

Petitioner Mikell Fuson, who is presently incarcerated at the Chippewa

Correctional Facility in Kincheloe, Michigan, has filed a petition for the writ of

habeas corpus under 28 U.S.C. § 2254. In his pro se application, Petitioner

challenges his state convictions and sentence for first-degree home invasion, Mich.

Comp. Laws § 750.110a(2), felon in possession of a firearm, Mich. Comp. Laws §

750.224f, and two counts of possession of a firearm during the commission of a

felony (felony firearm), Mich. Comp. Laws § 750.227b. For the reasons stated

below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

## I. BACKGROUND

The charges against Petitioner arose from the breaking and entering of a

house in Milford, Michigan on November 29, 2010. The homeowners arrived at the

house while the home invasion was in progress. They saw two armed suspects in

the house and one suspect outside the house. The homeowners left their property without entering the house and contacted the police, who arrested Petitioner and one of his accomplices within an hour of being dispatched to the area. A canine handler and his dog tracked Petitioner's scent back to an area near the victims' house.

On April 28, 2011, Petitioner pleaded guilty in Oakland County Circuit Court to first-degree home invasion, felon in possession of a firearm, and two counts of felony firearm. Petitioner also acknowledged being a habitual offender. In return, the trial court agreed to sentence Petitioner at the bottom of the sentencing guidelines, which were expected to be eighty-four months.[1]

On May 20, 2011, the trial court sentenced Petitioner, as promised, to eighty-four months (seven years) to forty years for the home-invasion conviction, fourteen months to forty years for the felon-in-possession conviction, and two years in prison for each of the felony-firearm convictions. The felony-firearm sentences were

---

[1] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court recognized the following manner in which trial court judges may participate in discussions about the potential sentence:

> At the request of a party, and not on the judge's own initiative, a judge may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.

> . . . The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources. However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

*Id*. at 212 (emphasis omitted).

ordered to run concurrently with each other, but consecutively to the other sentences, which ran concurrently with each other. All the sentences were ordered to run consecutively to the sentence that Petitioner was serving for violating parole in an unrelated case.

In an application for leave to appeal, Petitioner argued that he lacked a rational and factual understanding of the proceedings against him and that both the trial court and defense counsel erred by failing to raise the issue of his competence. The Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented to it. *See People v. Fuson*, No. 310400 (Mich. Ct. App. June 27, 2012). Petitioner apparently attempted to appeal the Court of Appeals' decision, but his application was rejected as untimely. *See* Pet. at 2 and Brief in Support of Pet. for Writ of Habeas Corpus, at ix; *see also* Affidavit of Larry Royster, Clerk of the Michigan Supreme Court, stating that the decision in Michigan Court of Appeals number 310400 was not appealed to the Michigan Supreme Court (ECF No. 10-10.)

Petitioner raised six of his seven habeas claims in a motion for relief from judgment. The trial court denied his motion in a reasoned opinion, and the Michigan Court of Appeals denied leave to appeal under Michigan Court Rule 6.508(D) and, more specifically, Rule 6.508(D)(3). *See People v. Fuson*, No. 319265 (Mich. Ct. App. Apr. 7, 2014). On November 25, 2014, the Michigan Supreme Court also denied leave to appeal under Rule 6.508(D). *See People v. Fuson*, 856 N.W.2d 16 (Mich. 2014).

Finally, on January 5, 2015, Petitioner filed his habeas petition. He raises seven claims about his sentence, his multiple convictions for firearm offenses, his trial and appellate attorneys, and the lack of an evidentiary hearing in state court.

Respondent Duncan MacLaren argues through counsel that the majority of Petitioner's claims (one through four and seven) are procedurally defaulted because Petitioner raised those claims for the first time in his post-conviction motion and the Michigan Court of Appeals relied on that fact to deny relief. Respondent also argues that, even if the Court considers the claims, they are meritless or not cognizable on habeas review.

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). It "is not a jurisdictional matter," *id*., and to obtain habeas relief on procedurally defaulted claims, a petitioner "must establish cause and prejudice for the defaults" and "also show that the claims are meritorious." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

Petitioner denies that his claims are procedurally defaulted and also blames his appellate attorney for not raising all his claims on direct appeal. The Court has determined that it is more efficient to address the merits of Petitioner's claims than to consider whether they are procedurally defaulted and whether Petitioner has established "cause" for the alleged defaults and resulting prejudice. Accordingly, the Court "cut[s] to the merits here," as "the cause-and-prejudice analysis adds nothing but complexity to the case." *Id*.

## II.  LEGAL STANDARD

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Section 2254(d) "thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-

court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision . . . and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 71-72 (citing *Williams*, 529 U.S. at 405, 413); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court"). Further, "'a determination of a factual issue made by a State court shall be

presumed to be correct,' unless rebutted by 'clear and convincing evidence.'"
*Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015) (quoting 28 U.S.C. §
2254(e)(1)), *cert. denied*, 136 S. Ct. 1384 (2016). Finally, "review under § 2254(d)(1)
is limited to the record that was before the state court that adjudicated the claim on
the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. ANALYSIS

### A. Jail Credit

In his first claim, Petitioner alleges that the trial court erred by failing to
grant him sentencing credit for the time that he spent in jail prior to being
sentenced. This claim is not cognizable on habeas review because "[a] state court's
alleged misinterpretation of state sentencing guidelines and crediting statutes is a
matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003),
and "federal habeas corpus relief does not lie for errors of state law." *Lewis v.
Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is
limited to deciding whether a conviction violated the Constitution, laws, or treaties
of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991).

Petitioner's claim also lacks merit. Michigan's jail credit statute provides
that,

> [w]henever any person is hereafter convicted of any crime within this
> state and has served any time in jail prior to sentencing because of
> being denied or unable to furnish bond for the offense of which he is
> convicted, the trial court in imposing sentence shall specifically grant
> credit against the sentence for such time served in jail prior to
> sentencing.

Mich. Comp. Laws § 769.11b.

Petitioner, however, was on parole when he committed the crimes at issue here, and the Michigan Supreme Court has held that

> the jail credit statute does not apply to a parolee who is convicted and sentenced to a new term of imprisonment for a felony committed while on parole because, once arrested in connection with the new felony, the parolee continues to serve out any unexpired portion of his earlier sentence unless and until discharged by the Parole Board.

*People v. Idziak*, 773 N.W.2d 616, 624 (Mich. 2009).  In other words,

> the parolee is "liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment" and actually resumes serving that term of imprisonment on the date of his availability for return to the [Department of Corrections], which in this case is synonymous with the date of his arrest. . . .  Because the parolee is required to remain in jail pending the resolution of the new criminal charge for reasons independent of his eligibility for or ability to furnish bond for the new offense, the jail credit statute does not apply.

*Id*. at 626–27.

Petitioner acknowledges the holding in *Idziak*, but argues that it does not apply to him because, in his opinion, the majority decision was based on an erroneous and incomplete reading of Michigan statutes.  Petitioner contends that the trial court should have relied on Justice Markman's dissenting opinion, which states that, after a new conviction, the Michigan Parole Board is "required to make an affirmative determination as to whether the defendant is required to serve any remaining portion on his original sentence." *Id*. at 654.  The trial court, however, was required to follow the Michigan Supreme Court's majority opinion in *Idziak*. *See Solomon v. Civil Serv. Commission, City of Highland Park,* 236 N.W.2d 94, 95

(1975) (noting that the Court of Appeals was bound by a majority opinion of the Michigan Supreme Court).

Petitioner also claims that *Idziak* does not apply to him because the trial court denied him jail credit before the court revoked his parole. Petitioner contends that this sequence of events violated his right to notice and due process of law. The record, however, indicates that Petitioner was informed before he pleaded guilty that his sentence likely would run consecutively to the sentence for which he was on parole. (4/28/11 Plea Tr. at 7-8.) The implication was that he was serving time on his prior conviction and would begin serving his new sentence after the expiration of his prior sentence. His right to notice was not violated, and his jail-credit claim lacks merit.

### B. Calculation of the Sentencing Guidelines

Petitioner alleges next that the trial court incorrectly scored offense variables 9 and 19 the Michigan sentencing guidelines. Petitioner received ten points for both offense variables. He maintains that subtracting ten points from either one of those offense variables would decrease the sentencing guidelines range, and because the trial court agreed to sentence him at the low end of the guidelines, the trial court's errors prejudiced him. The trial court reviewed Petitioner's claim during post-conviction proceedings and determined that Petitioner had failed to show the sentencing guidelines were improperly scored.

This Court rejects Petitioner's claim because, like his first claim, a challenge to the state court's application and interpretation of state sentencing guidelines is

"a matter of state concern only." *Howard*, 76 F. App'x at 53. Consequently, his claim is not cognizable on habeas review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). And even though Petitioner argues that the trial court relied on inaccurate information in violation of his constitutional rights, the following discussion demonstrates that the trial court did not rely on "extensively and materially false" information in violation of Petitioner's right to due process. *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

### 1. Offense Variable 9

Offense variable 9 addresses the number of victims involved in the case under consideration. Mich. Comp. Laws § 777.39(1). Petitioner was assessed ten points, which would be correct if two to nine victims "were placed in danger of physical injury or death" or four to nineteen victims "were placed in danger of property loss." Mich. Comp. Laws § 777.39(1)(c).

There were two victims in this case: the homeowners, Mr. and Mrs. Huszti. Petitioner points out that Mrs. Huszti was not inside the house when the home invasion occurred, and he claims there is no mention of where Mr. Huszti was at the time. Thus, according to Petitioner, there were no facts to support the conclusion that two or more victims were placed in danger of physical injury or death.

Although Mr. Huszti did not testify at the preliminary examination, Mrs. Huszti testified that she and her husband drove into their driveway about 11:00 a.m. on November 29, 2010. They noticed a rusty minivan parked there, and when

she looked through the front glass door of their house, she saw two men running through the house with large guns.  At the time, she and her husband were seated in their car about twenty to thirty feet away from the men.  (12/15/10 Prelim. Examination at 4-9, 11, 24.)

Continuing, Mrs. Huszti testified that, after she pulled a phone out of her purse to call 911, she saw a third person enter the minivan parked next to the couple's garage.  Although she did not notice whether the third suspect was armed, two police officers established at the preliminary examination that there was a loaded long gun in the minivan.  (*Id*. at 9-10, 19, 26; 2/16/11 Prelim. Examination at 18-19, 25, 30.)

First-degree home invasion is considered a continuing offense, because it "is not necessarily completed at the time of entry into a dwelling, but rather can be completed by commission of the final element of the crime while the person is present in (or leaving) the dwelling."  *People v. Shipley*, 662 N.W.2d 856, 863 (Mich. Ct. App. 2003).   Further, in *People v. Baker*, No. 302784, 2012 WL 1415159, at *6 (Mich. Ct. App. Apr. 24, 2012) the Michigan Court of Appeals upheld the trial court's scoring of offense variable 9 where the homeowner and her five-year-old son arrived in their driveway during the home invasion.  The Court of Appeals concluded that, because the homeowner and her son were in proximity to the defendant and his accomplices, they were placed in danger of physical injury or death.

This case is similar to the facts in *Baker*, in that the Husztis arrived in their driveway as the home invasion was occurring. A reasonable inference from their close proximity to the armed suspects is that they were placed in danger of physical injury or death. "A trial court's scoring decision 'for which there is any evidence in support will be upheld.' " *People v. Steele*, 769 N.W.2d 256, 269 (Mich. Ct. App. 2009) (quoting *People v. Endres,* 711 N.W.2d 398, 400 (Mich. Ct. App. 2006)). Thus, the score of ten points for offense variable 9 was justified, and the state trial court did not rely on materially false information when scoring the offense variable.

### 2. Offense Variable 19

Petitioner challenges the trial court's scoring of offense variable 19, which assesses whether there was a "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." Mich. Comp. Laws § 777.49. Petitioner was assessed ten points on the basis that he "interfered with or attempted to interfere with the administration of justice." Mich. Comp. Laws § 777.49(c).

Petitioner maintains that offense variable 19 is not applicable to his case because he left the scene before the police were notified and because he did nothing to hinder law enforcement officials. He concedes there may be evidence that he fled the area after the crime, but he contends that he did not try to prevent the victims from reporting the crime, nor keep the police from investigating the crime or arresting him. He also claims that he did not change his appearance after the

crime, provide a false name to the police at his arrest, nor try to conceal evidence from the authorities.

In *People v. Barbee*, 681 N.W.2d 348 (Mich. 2004), the Michigan Supreme Court stated "that the phrase 'interfered with or attempted to interfere with the administration of justice' encompasses more than just the actual judicial process" because "[l]aw enforcement officers are an integral component in the administration of justice, regardless of whether they are operating directly pursuant to a court order." *Id.* at 350-51. The state supreme court concluded that conduct which "occurs before criminal charges are filed can form the basis for interference, or attempted interference, with the administration of justice, and [offense variable] 19 may be scored for this conduct where applicable." *Id.* at 351. Decisions of the Michigan Court of Appeals and the Michigan Supreme Court

> have held the following conduct to constitute an interference or attempted interference with the administration of justice: providing a false name to the police, threatening or intimidating a victim or witness, telling a victim or witness not to disclose the defendant's conduct, *fleeing from police contrary to an order to freeze*, attempting to deceive the police during an investigation, interfering with the efforts of store personnel to prevent a thief from leaving the premises without paying for store property, and committing perjury in a court proceeding.

*People v. Hershey*, 844 N.W.2d 127, 136–37 (2013), leave to appeal dismissed, 858 N.W.2d 461 (Mich. 2015) (emphasis added).

The record in this case reveals that Petitioner discarded clothing and a gun in the woods after a police officer observed him and then ran from the officer and continued to run after the officer ordered him to stop. (1/26/11 Prelim. Examination

Tr. at 4-13.) Although the officer lost track of Petitioner at that point, he was ultimately captured about forty-five minutes after the home invasion was broadcast to law enforcement officers. (*Id*. at 24-32.)

Given this testimony, the trial court reasonably concluded that Petitioner hindered the administration of justice. The trial court did not rely on materially false information when scoring ten points for offense variable 19.

### 3. *Alleyne*

Petitioner alleges that the facts used to score offense variables 9 and 19 were not admitted by him, nor found a jury beyond a reasonable doubt, and, therefore, he was sentenced in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

The Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. The Supreme Court subsequently held in *Alleyne*: "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id*. at 2155.

The Michigan Supreme Court has considered whether Michigan's sentencing guidelines violate a defendant's Sixth Amendment right to a jury trial and concluded that the rule from *Apprendi*, as extended by *Alleyne*,

> applies to Michigan's sentencing guidelines and renders them
> constitutionally deficient. That deficiency is the extent to which the
> guidelines *require* judicial fact-finding beyond facts admitted by the
> defendant or found by the jury to score offense variables (OVs) that

14

*mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*.

*People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015) (emphasis in original), *cert.*

*denied sub nom. Michigan v. Lockridge*, 136 S. Ct. 590 (2015).

The state trial court in this case sentenced Petitioner pursuant to the *Cobbs*

agreement, and, in the words of one Michigan Court of Appeals judge,

> [w]hen a sentencing judge imposes a legal sentence pursuant to the terms of a plea agreement bargained for and accepted by the defendant, the sentence is not affected by the judge's perception of the mandatory or advisory nature of the sentencing guidelines and, thus, the defendant's Sixth Amendment jury trial right is not implicated. *See United States v. Cieslowski*, 410 F3d 353, 356–357, 363–364 (CA 7, 2005), cert den 456 U.S. 1097 (2006). Stated another way, because defendant agreed to a sentence within the guidelines range, the sentence imposed by the trial court "arose directly from the plea agreement and was not based on any facts found only by the trial court." *Amezcue v. Almager*, unpublished order of the United States District Court for the Central District of California, issued May 25, 2009 WL 1513427), p. 5, aff'd 577 Fed Appx 699 (CA 9, 2014). Moreover, by expressly and voluntarily bargaining for and agreeing to a guidelines sentence, defendant voluntarily waived his Sixth Amendment right and any related concerns. *Amezcue*, 577 Fed App'x at 700–701.

*People v. Velez*, No. 315209, 2015 WL 5945364, at *4 (Mich. Ct. App. Oct. 13,

2015)(unpublished) (Boonstra, P.J., concurring). As in *Velez*, "there are no Sixth

Amendment concerns [here], and the rule of *Alleyne* and *Lockridge* is not

implicated." *Id*.

## C. Double Jeopardy

The third habeas claim alleges that Petitioner's two convictions for felon in

possession of a firearm violate the Double Jeopardy Clause because the convictions

were based on the same firearm. Petitioner actually was convicted of only one count

15

of felon in possession of a firearm.  His supporting brief, however, indicates that his real concern is having been convicted and punished for two counts of felony-firearm, where one of the underlying convictions was felon in possession of a firearm.

Petitioner asserts that the two felony-firearm convictions violate the prohibition against being twice convicted and sentenced for the same offense, because the same firearm was used throughout the criminal incident.  In other words, the firearm was possessed at the same time, in the same location, and during the commission of one continuous event.  The state trial court disagreed with Petitioner's argument and concluded that Petitioner was not entitled to relief from judgment on the basis of this issue.

### 1.  Legal Framework

The Double Jeopardy Clause of the Fifth Amendment states that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ."  U.S. CONST. amend. V.   The Clause is "applicable to the States through the Fourteenth Amendment," and "it protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense."  *Monge v. California*, 524 U.S. 721, 727–28 (1998) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

> What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment.  Specifically, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater

punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed.2d 535 (1983).

*Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014).

Michigan's felony-firearm statute prohibits the possession of a firearm during the commission of, or attempt to commit, a felony. Mich. Comp. Laws § 750.227b(1). "The Legislature intended the felony-firearm statute to reduce the possibility of injury to victims, passersby, and police officers posed by a criminal's utilization of a firearm and to deter the underlying felony itself." *People v. Dillard*, 631 N.W.2d 755, 760 (2001).

The felon-in-possession statute generally prohibits persons previously convicted of a felony from possessing a firearm until a few years after the person has paid all fines, served all terms of imprisonment, successfully completed all conditions of probation or parole, and has had his or her right to possess a firearm restored. Mich. Comp. Laws § 750.224f. "[T]he felon in possession statute focuses on the criminal status of a possessor of a firearm," whereas," [t]he felony-firearm statute . . . focuses on the act of utilizing a firearm to facilitate the commission of a felony." *Dillard*, 631 N.W.2d at 759-60.

The two statutes (§§ 750.224f and 750.227b) "have distinct purposes that address different social norms." *Id*. at 760. Therefore, the two offenses "should be viewed as separate and amenable to permitting multiple punishments." *Id*. In other words, a "defendant could constitutionally be given cumulative punishments when charged and convicted of both felon in possession, M.C.L. § 750.224f, and felony-firearm, M.C.L. § 750.227b." *People v. Calloway*, 671 N.W.2d 733, 735 (Mich.

2003). Furthermore, a defendant can be convicted of one count of felony-firearm for each felony committed during a single sequence of events. *People v. Morton*, 377 N.W.2d 798, 798, 801 (Mich. 1985).

### 2. Application

Petitioner was convicted of, and sentenced for, two counts of felony firearm: one for the underlying crime of home invasion and one for the underlying crime of felon in possession of a firearm. This was proper under state law. *Id*.

Sentencing Petitioner for both felon in possession of a firearm and felony firearm also was proper because the Michigan Legislature intended the two offenses to be punished separately. *Calloway*, 671 N.W.2d at 735. The state court, therefore, did not violate Petitioner's double jeopardy rights by sentencing Petitioner to two counts of felony firearm, because the sentencing court did not punish Petitioner to more than the legislature intended. *Hunter*, 459 U.S. at 366.

### D. Trial Counsel

The fourth claim alleges ineffective assistance of trial counsel. Petitioner contends that his trial counsel failed to: (1) ensure that Petitioner's plea was knowing and the plea agreement understood; (2) challenge the two felony-firearm convictions; and (3) object to the scoring of offense variables 9 and 19 of the sentencing guidelines. The trial court rejected Petitioner's claims about trial counsel because the underlying claims lacked merit.

### 1. Clearly Established Federal Law

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of a guilty plea, a deficient performance is one that falls below an objective standard of reasonableness or is outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).

The "prejudice" prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. In other words, the defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt v. Titlow*, 134 S.Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 690).

### 2. Application

#### a. The Plea

Petitioner contends that his trial attorney failed to ensure that he knew and understood the charges to which he pleaded guilty. He states that the trial court's description of the charges was confusing, and that trial counsel should have

objected or asked for clarification because the trial court's comments were beyond his comprehension.

To be valid, a guilty plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970)). Among the factors to be considered are whether the defendant appreciated the consequences of his waiver of constitutional rights, waived his rights without being coerced to do so, and understood the rights that he was surrendering by pleading guilty. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009). Additional factors to be considered are whether the defendant understood the essential elements of the offenses to which he was pleading guilty and whether he was aware of the maximum sentence for his crimes. *Id.* at 408-09.

The record indicates that Petitioner was thirty years old at the plea proceeding and that he could read, write, and understand the English language. He stated that he understood he was pleading guilty to first-degree home invasion, possession of a firearm by a felon, and two counts of possession of a firearm during the commission of a felony. (4/28/11 Plea Hr'g at 5-6; Pg IDs 398-399) He also stated that he understood (1) his sentence could be as much as life imprisonment because he was a fourth habitual offender, (2) his sentence for possessing a firearm during the commission of a felony would be consecutive, and (3) the Court would sentence him at the low end of the guidelines, which were approximately 84 months. (*Id.* at 5-6, 8-9; Pg IDs 398-399, 401-402).

Although Petitioner claims in an affidavit attached to his petition that his plea was coerced and that his trial counsel did not explain the rights he was forfeiting by pleading guilty, the trial court enumerated those rights at the plea proceeding.  Petitioner assured the Court that he understood the rights he was waiving by pleading guilty.  He also stated that it was his choice to plead guilty and that no one had threatened him to make him plead guilty.  (*Id*. at 10-12, Pg IDs 403-405.)  He subsequently acknowledged his prior convictions and the factual basis for his plea.  (*Id*. at 12-14; Pg IDs 405-407.)

Petitioner consulted and communicated with his attorney a few times during the plea proceeding (*id*. at 3-4, 7-8), but he appeared to understand the plea agreement and the crimes for which he was pleading guilty.  The only questions he voiced on the record dealt with restitution and whether he could appeal his convictions if he pleaded guilty.  The attorneys and the trial court appear to have answered his questions satisfactorily.  (*Id*. at 9-10, 12.)  Furthermore, Petitioner stated that he was satisfied with his attorney's advice (*id*. at 5), and when the trial court asked him at sentencing whether he wanted to make a statement, Petitioner simply apologized for his conduct and said that his actions toward the community were "preposterous and selfish."  (5/20/11 Sentencing Tr. at 4; Pg ID 413)

To conclude, there is no factual support in the record for Petitioner's claim that his plea was not knowing and voluntary or that defense counsel failed to ensure the plea was voluntary and knowing.  Even if trial counsel's performance was deficient, Petitioner has not alleged that, but for counsel's deficient

performance, he would not have pleaded guilty and would have chosen to go to trial. Therefore, he has not established that he was prejudiced by counsel's performance.

### b. Failure to Object to the Double Jeopardy Violation and to the Scoring of the Offense Variables

Petitioner also claims that his trial attorney's performance was deficient because the attorney failed to challenge the two counts of felony firearm and failed to object to the scoring of offense variables 9 and 19. As pointed out above, however, there was no violation of the Double Jeopardy Clause, and the scores for offense variables 9 and 19 were supported by the facts. *See supra*, Section III.B. and III.C. Because Petitioner's underlying claims lack merit, defense counsel was not ineffective for failing to object to the scoring of the guidelines or to the alleged double jeopardy violation. *See Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010).

### E. Appellate Counsel

The fifth claim alleges ineffective assistance of appellate counsel. Petitioner asserts that his appellate attorney's failure to raise his habeas claims on direct appeal was deficient performance. Petitioner also asserts that his current issues are "dead bang winners" and that he stood a good chance of having his case remanded for trial if appellate counsel had raised the issues on direct appeal. The trial court, however, rejected Petitioner's claims about appellate counsel because the underlying claims lacked merit.

### 1. Clearly Established Federal Law

Claims of ineffective assistance of appellate counsel are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). To prevail on these claims, Petitioner "must show that his [appellate] counsel's performance was deficient and that he was prejudiced as a result." *Id.* (citing *Strickland*, 466 U.S. at 687). This requires demonstrating (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal; and (2) there is a reasonable probability he would have prevailed on appeal if his attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).

### 2. Application

For the reasons set forth above, Petitioner's underlying claims about his plea and sentence, his trial attorney, and the lack of an evidentiary hearing in state court are meritless. Therefore, appellate counsel's performance was not deficient. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Petitioner also has failed to show that his appellate attorney's performance prejudiced him. He raised all his claims, with the exception of his sixth claim about being denied an evidentiary hearing, in his motion for relief from judgment, which the trial court rejected at least in part for lack of merit. Consequently, there is not a reasonable probability that Petitioner would have prevailed if his attorney had raised the issues on direct appeal. The state courts' rejection of Petitioner's claim

about appellate counsel was neither contrary to, nor an unreasonable application of, *Strickland*.

## F.  The Lack of an Evidentiary Hearing

The sixth claim alleges that the state courts erred and violated Petitioner's right to due process by not holding an evidentiary hearing on Petitioner's claims about his trial attorney.  Petitioner contends that, without a hearing and further development of the facts, the state courts could not appreciate the significance of the alleged Sixth Amendment violations and his trial attorney's failures and omissions.

To the extent Petitioner contends that the Michigan courts unconstitutionally denied him a forum in which to develop the factual record for his ineffective-assistance-of-counsel claims, his claim is meritless.  *Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006).  And "[w]hether or not the Michigan courts complied with the procedural requirements of Michigan law is not a matter for this court to decide on a petition for habeas corpus relief."  *Id*. (citing *Baze v. Parker*, 371 F.3d 310, 322-23 (6th Cir. 2004)).

Petitioner relies on *Massaro v. United States*, 538 U.S. 500 (2003), in which the Supreme Court stated that "ineffective-assistance claims ordinarily will be litigated in the first instance in the [federal] district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial."  *Id*. at 505.  But the Supreme Court did not hold that state courts are required, as a matter of constitutional law, to hold an evidentiary

hearing on claims of ineffective assistance of counsel. In fact, *Massaro* is not a constitutional decision. *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003); *Gomez v. Jaimet*, 350 F.3d 673, 678 (7th Cir. 2003).

> *Massaro* holds that a defendant in a federal criminal prosecution need not raise a claim of ineffective-assistance on direct appeal but always may reserve it for a collateral proceeding under 28 U.S.C. § 2255. This is a rule of practice for federal judges in federal criminal cases . . .

*Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005).

Furthermore, if Petitioner's concern is the state court's handling of his motion for relief from judgment during the post-conviction proceedings, his claim is "outside the scope of federal habeas corpus review" because:

> [T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody. A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (quotation marks and citations omitted). Moreover,

> it would be an unusual intrusion for federal courts to second-guess state procedures for resolving motions once they have been presented. States are independent sovereigns, and the federal government generally speaking should respect their choices about how to adjudicate disputes.
>
> . . . [Federal courts] must instead presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim – resolving some motions with neither an evidentiary hearing nor an oral argument, some with an oral argument alone, some with both.

*Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 1174 (2015). Petitioner's challenge to the state courts' refusal to hold an evidentiary hearing is not cognizable on habeas corpus review and also lacks merit.

### G. The *Cobbs* Agreement

In his seventh and final claim, Petitioner alleges that he should be permitted to withdraw his guilty plea because the trial court failed to comply with the sentencing agreement. The agreement, however, called for a sentence at the low end of the sentencing guidelines, which were estimated at 84 months (4/28/11 Plea Tr. at 6-8), and the trial court sentenced Petitioner to a minimum of 84 months, which was the bottom end of the sentencing guidelines (5/20/11 Sentencing Tr. at 4-5; Pg IDs 413-414). There was no breach of the *Cobbs* agreement and no unfulfilled promise. Petitioner got precisely what he bargained for in the plea agreement. Thus, habeas relief is not warranted on his claim.

## IV. CERTIFICATE OF APPEALABILITY

When a federal district court issues an adverse ruling on a habeas petition, the court "must issue or deny a certificate of appealability." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*,

537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack,* 529 U.S. at 484.

Petitioner's claims lack merit for the reasons given above, and reasonable jurists would not find the Court's assessment of the claims debatable or wrong. Accordingly, Petitioner is denied a certificate of appealability. The Court nevertheless grants leave to appeal *in forma pauperis* because Petitioner was granted *in forma pauperis* status in this Court, and an appeal would not be frivolous. Fed. R. App. P. 24(a)(3)(A).

## V. CONCLUSION

Based on the foregoing, it is **ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED**, and this case is hereby closed.

It is **FURTHER ORDERED** that a certificate of appealability is **DENIED**.

It is **FURTHER ORDERED** that *in forma pauperis* status on appeal is **GRANTED** because leave to proceed *in forma pauperis* was granted in this case, and an appeal could be taken in good faith.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: August 30, 2017

**<u>Certificate of Service</u>**

I hereby certify that this Order was electronically submitted on August 30, 2017, using the CM/ECF system, which will send notification to each party.

<u>s/A. Chubb             </u>
Case Manager